*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. PALMER, Minor.

UNPUBLISHED
June 24, 2025
10:37 AM

Nos. 371252; 371253
Calhoun Circuit Court
Family Division
LC No. 2023-003058-NA

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father and respondent-mother appeal as of right the termination of their parental rights to the minor child, EP, under MCL 712A.19b(3)(k)(*iii*) (battering, torture, or other severe physical abuse), MCL 712A.19b(3)(k)(*v*) (life-threatening injury), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTS AND PROCEEDINGS

Shortly before her second birthday in November 2023, EP was taken to Oaklawn Hospital, and, on arrival, she was lethargic, emaciated, and minimally responsive. EP weighed about 10 pounds, she had very low blood sugar, and her low temperature indicated that she was hypothermic. An emergency room doctor concluded that EP "had a high probability of imminent or life-threatening deterioration due to" acute encephalopathy, malnourishment, and acute hypoglycemia. EP was quickly transferred to the pediatric intensive care unit (PICU) at Bronson Children's Hospital, where she was described as "nearly dead."

Although Dr. Sarah Brown—who cared for EP in the PICU and also testified as an expert in child abuse pediatrics—told respondent-mother about the severity of EP's medical condition, respondent-mother refused to answer any questions about EP's medical history. Respondent-father also did not provide any information to assist in EP's care, and Dr. Brown testified that, in

---

[1] *In re Palmer Minor*, unpublished order of the Court of Appeals, entered June 18, 2024 (Docket Nos. 371252 and 371253).

the PICU, an attorney told her not to question respondents about EP. Dr. Brown ultimately diagnosed EP with medical neglect, severe malnourishment, refeeding syndrome with mild transaminitis, elevated ferritin, severe deconditioning, loss of muscle mass, and loss of brain volume caused by malnutrition. Two days after her arrival to the hospital, EP suffered a cardiopulmonary arrest, and, although doctors were able to restart her heart, her condition remained "touch and go." Because of severe damage to her kidneys, Dr. Brown had EP transported to CS Mott Children's Hospital, where she remained until her discharge in January 2024.

Doctors found that respondents' failure to feed EP over a period of months caused her medical condition and that this affected every organ system in her body. They further concluded that respondents provided EP with little to no human interaction, and evidence showed that respondents kept EP confined inside a portable crib in a bedroom of the home. The damage caused by interactional neglect required EP to learn "how to be a human," including learning to: look at people as they entered the room, sit and listen to a book, and communicate her needs. EP gained weight by the time she left the hospital, but she could not walk or speak, and Dr. Brown anticipated that EP would have life-long physical, psychological, and educational problems because of the injuries inflicted by respondents.

Following the initial removal, the Department of Health and Human Services (DHHS) filed an amended petition to terminate respondents' parental rights to EP at the initial disposition. The DHHS alleged that respondents subjected EP to aggravated circumstances; therefore, the DHHS had no duty to make reasonable efforts to reunify the family. Following a hearing, the referee concluded that clear and convincing evidence established aggravated circumstances, and the trial court signed and entered the referee's recommended order. At the adjudication, respondents pleaded no contest to various allegations in the amended petition, and, following the dispositional hearing, the trial court terminated their parental rights to EP as described. These appeals followed.

## II. RESPONDENT-FATHER'S RIGHT TO COUNSEL

Respondent-father first argues that the trial court violated his Sixth Amendment right to counsel because there was a complete denial of counsel at a critical stage of the proceeding. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Respondent-father did not raise this issue in the trial court; therefore, this issue is not preserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We review unpreserved constitutional claims under the plain-error rule. See *id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re Sandborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted).

## B. LEGAL PRINCIPLES

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances . . . ." *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d

919 (2022) (quotation marks and citation omitted; ellipsis in original). "Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id.* (quotation marks and citation omitted). MCL 722.638(1) requires the DHHS to file a petition for authorization under MCL 712A.2 if there are any of several aggravated circumstances set forth in MCL 722.638(1).

A parent has a right to appointed counsel in proceedings to terminate parental rights. See MCL 712A.17c(4); MCR 3.915(B)(1). "[A]lthough child protective proceedings are not criminal in nature, where the right to effective counsel arises from the Sixth Amendment, the Due Process Clause indirectly guarantees effective assistance of counsel in the context of child protective proceedings." *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). "In analyzing claims of ineffective assistance of counsel at termination hearings, this Court applies by analogy the principles of ineffective assistance of counsel as they have developed in the criminal law context." *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71 (1988).

In criminal cases, prejudice is presumed when, in rare circumstances, there is a complete denial of counsel at a critical stage of the proceeding. *United States v Cronic*, 466 US 648, 659-660; 104 S Ct 2039; 80 L Ed 2d 657 (1984). A critical stage is one that holds "significant consequences for the accused." *Bell v Cone*, 535 US 685, 696; 122 S Ct 1843; 152 L Ed 2d 914 (2002). A party is denied counsel when counsel is either totally absent or is otherwise prevented from assisting the party during the critical stage. *Cronic*, 466 US at 659 n 25. "It is well established that a total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal." *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005).

C. ANALYSIS

Regardless whether the finding of aggravated circumstances is a critical stage of termination proceedings for purposes of the Sixth Amendment right to counsel, the record reflects that respondent-father was not deprived of his right to counsel.

In this case, the trial court ordered the referee to conduct a hearing to determine whether respondents subjected EP to aggravated circumstances such that the DHHS was relieved of its duty to make reasonable efforts to reunify the family. The referee had the authority to preside over the hearing pursuant to MCR 3.913(A) and (B), and the referee explicitly advised the parties of their right to object within seven days. At the hearing, respondent-father and his counsel were present, counsel cross-examined petitioner's witnesses, and counsel argued against a finding of aggravated circumstances and asked the referee to order the DHHS to offer respondent-father services. The referee disagreed and found that the evidence supported a finding of aggravated circumstances because clear and convincing evidence showed that respondents caused life-threatening injuries to EP that also caused brain damage. See MCL 722.638(1). Therefore, until the adjudication, the referee concluded that the DHHS should not be required to make reasonable efforts to reunify respondent-father and EP.

After the evidentiary hearing, the referee submitted a recommended order that included specific findings of fact. Respondent-father did not object or request review pursuant to MCR 3.991(A) and (B), and the trial court signed and entered the recommended order.

One month later, at a permanency planning hearing before the trial court, respondent-father's counsel was present over Zoom, but he left the hearing for some unspecified reason before he said anything on the record. Pursuant to the trial court's inquiry, petitioner's counsel confirmed to the trial court that no one objected to the order finding aggravated circumstances, which relieved the DHHS of its duty to make reasonable efforts to reunify the family. Counsel for respondent-mother and the lawyer-guardian ad litem also stipulated that reasonable efforts were not required on the basis of that order.

Respondent-father argues that he was denied counsel at a critical stage of the proceeding because his counsel left the permanency planning hearing. But, as discussed, the proceeding at which the pivotal issues of aggravated circumstances and the DHHS's obligations were addressed occurred one month before this hearing, at which respondent-father was represented by counsel. The trial court merely noted no objections to that proceeding at the permanency planning hearing.

We are cognizant that MCR 3.915(B) states that a respondent is entitled to an appointed attorney at any hearing conducted under the court rules in a termination proceeding. But, even if the trial court erred by failing to adjourn the permanency planning hearing so that respondent-father's counsel could attend, respondent-father has not shown that he was prejudiced. As discussed, at the permanency planning hearing, the trial court merely confirmed what was already entered in a written order on the issue of aggravated circumstances and the provision of services. The record also reflects that respondent-father was offered services and declined them. Therefore, respondent-father has not shown that counsel's absence from the permanency planning hearing affected the outcome of the proceedings. See *Sanborn*, 337 Mich App at 258.

## II. FINDING OF AGGRAVATED CIRCUMSTANCES

Respondents both argue that petitioner failed to present clear and convincing evidence that they subjected EP to aggravated circumstances; therefore, they were wrongfully deprived of reunification services by the DHHS. Again, we disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

This issue is preserved because it was raised before, and considered by, the trial court. See *In re TK*, 306 Mich App at 703. We review for clear error the trial court's factual determination that a respondent subjected a child to aggravated circumstances. See *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "When reviewing the trial court's findings of fact, this Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App at 541.

## B. LEGAL PRINCIPLES

As discussed, MCL 722.638(1) requires the DHHS to file a petition for authorization under MCL 712A.2 if there are aggravated circumstances set forth in MCL 722.638(1). MCL 722.638 provides, in relevant part, as follows:

(1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

\* \* \*

(*iii*) Battering, torture, or other serious physical harm.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

C. ANALYSIS

At the outset, respondent-mother urges us to adopt a rule that a trial court should rely only on legally admissible evidence when deciding whether a respondent has subjected a minor child to aggravated circumstances. But, as set forth in MCL 722.638(1), the presence of aggravated circumstances requires the DHHS to submit a petition for authorization, which the DHHS did in this case. Pursuant to MCR 3.965(B)(12), a trial court may authorize a petition if there is probable cause that the allegations in the petition are true and if they fall within MCL 712A.2(b). According to the plain language of MCR 3.965(B)(12), "[t]he Michigan Rules of Evidence do not apply" to the trial court's decision whether to authorize the petition. Therefore, we decline respondent-mother's request to impose a requirement that is contrary to the plain language of the applicable statutes and court rules.

We also conclude that the trial court did not clearly err by finding clear and convincing evidence that respondents subjected EP to aggravated circumstances pursuant to MCL 722.638(1)(a)(*iii*) (torture), (*iv*) (serious impairment of an organ), and (*v*) (life-threatening injury). "Torture" is not defined under the Child Protection Law, MCL 722.621 *et seq.*, but it is defined by the criminal statute on the crime of torture, MCL 750.85(1): "A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture . . . ." Generally, "[a]n undefined statutory term must be accorded its plain and ordinary meaning. A lay dictionary may be consulted to define a common word or phrase that lacks a unique legal meaning." *In re Lange*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166509); slip op at 12 (quotation marks and citation omitted). To the extent that "torture" is a common word, it is defined as a transitive verb to mean "to cause intense suffering to . . . ." *Merriam-Webster's Collegiate Dictionary* (11th ed). Starving an infant or toddler nearly to death fits within either definition of torture.

To the extent that respondents argue on appeal that their conduct did not rise to the level of aggravated circumstances, the evidence showed that their neglect and failure to feed EP

occurred over a long period in light of evidence that EP was nearly dead when she was taken to the hospital and that she was visibly weak, emaciated, and severely underweight. Evidence showed that respondents did not provide EP any nourishment despite their ability to do so and notwithstanding that EP was visibly ill, not gaining weight, and nearly dead.[2] Moreover, the healthcare workers that treated EP were "very bothered by [respondent-mother's] lack of empathy" toward EP while she was in the hospital. Additionally, respondent-mother lied to the foster-care worker about taking EP to a pediatrician for healthcare. Evidence showed that respondents had not taken EP for any medical care since she was released from the hospital at birth.

There was plainly clear and convincing evidence that respondents subjected EP to aggravated circumstances through interactional neglect and failure to feed her, which amounted to torture, caused serious impairment to EP's body and brain, and caused life-threatening injuries to EP because she was nearly dead when she arrived at the hospital, and her heart stopped while in the hospital. See MCL 722.638(1)(a)(*iii*), (*iv*), and (*v*). Accordingly, we conclude that respondents have not shown that the trial court clearly erred by finding aggravated circumstances. See *In re Fried*, 266 Mich App at 541. As discussed, the trial court correctly ruled that the presence of aggravated circumstances relieved the DHHS of its duty to make reasonable efforts to reunify the family. Having shown no error, neither party is entitled to relief on this issue.[3]

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

---

[2] Notably, evidence established that respondent-mother knew she had problems breastfeeding her older two children and that she required assistance from medical providers and CPS to ensure that those children received adequate nutrition through formula. Nevertheless, respondents sought no help with breastfeeding EP.

[3] Respondent-mother also asks us to remand this case to the trial court for appellate counsel to obtain the "full" record and to allow her to "restart the clock" on her claim of appeal. Respondent-mother has not shown that her counsel was impermissibly denied access to the lower court record, which was available in full in the circuit court before counsel was appointed. Nevertheless, the existing record available to this Court on appeal is complete and, therefore, sufficient to allow consideration of the issues on appeal. Accordingly, we decline to grant respondent-mother the relief requested.